UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

TREVAN C. CREASON                                                                                               PLAINTIFF

v.                                                                                                                  NO. 5:21-CV-39-BJB

EXPERIAN INFORMATION SOLUTIONS, INC.                                                              DEFENDANT

### MEMORANDUM OPINION & ORDER

Congress enacted the Fair Credit Reporting Act in 1970 to require accuracy in credit reporting. Invoking this statute and its private right of action, Trevan Creason sued Experian Information Solutions for mixing up his credit report with someone else's. This unfair credit reporting, Creason contends, led lenders to deny several of his credit applications.

Experian now seeks to compel arbitration of these FCRA claims under sections 3 and 4 of the Federal Arbitration Act. *See* 9 U.S.C. §§ 1–16; Motion to Compel Arbitration (DN 55) at 1. To Creason, this, too, is unfair: Experian has litigated this case in federal court for two years, knew of its arbitration right all along, nevertheless answered his complaint and participated in fact discovery, and could've saved everyone (including the Court) a lot of time and hassle by pursuing arbitration much sooner. This litigation conduct amounts to a waiver of Experian's (admitted) contractual right to arbitrate, according to Creason's Response (DN 58), or at a minimum warrants additional discovery regarding waiver.

Creason's frustration is understandable—and his argument is potentially correct. But the question is not one that this Court gets to decide. That's because the parties agreed to arbitrate "all issues" arising out of this contract, whose formation Creason doesn't challenge. So the Court grants Experian's motion to compel arbitration, denies Creason's request for additional discovery as moot, and denies Creason's request to file a sur-reply (devoted entirely to the merits of the waiver argument) as moot.

### THE RECORD

In September 2020, Creason enrolled in CreditWorks, an online service operated by Experian that gives consumers access to their credit reports. Williams Decl. (DN 55-1) at 1.[1] Creason completed his enrollment by clicking a "Create Your

---

[1] More precisely, CreditWorks is operated by Experian Consumer Services ("ECS"). Experian Information Solutions, Inc.—the Defendant named in this case, referred to throughout simply as "Experian"—is an affiliate of ECS, and both entities are wholly-owned subsidiaries of Experian Holdings, Inc. Williams Decl. (DN 55-1) at 1. The agreement

1

Account" button on a single webpage. *Id.* at 1–2. The page stated that "By clicking 'Create Your Account': I [Creason] accept and agree to your [Experian's] Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." *Id.* at 2. The phrase "Terms of Use Agreement" appeared in blue, bolded text and included a hyperlink that, if clicked, would have presented Creason with the full text of the contractual terms he agreed to. *Id.*[2]

The Terms of Use Agreement contained an Arbitration Agreement, prefaced by an all-capitals section headlined "Dispute Resolution by Binding Arbitration," which included the warning: "Please read this carefully. It affects your rights." Williams Decl. Exhibit 2 at 14. The Arbitration Agreement provided that:

> The agreement to arbitrate includes, but is not limited to: claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, whether based in contract, tort, statute (including, without limitation, the Credit Repair Organizations Act) fraud, misrepresentation or any other legal theory …

*Id.* Exhibit 2 at 15. The Arbitration Agreement further noted:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable.

*Id.* Exhibit 2.

Finally, the Terms of Use Agreement incorporated the AAA Rules: "In all events, the AAA Rules shall govern the parties' dispute." *Id.* Exhibit 2 at 16.[3]

---

between Creason and Experian applies to ECS and its "parent entities, subsidiaries, [and] affiliates." *Id.* at 3. Experian has been an affiliate of ECS before and since Creason enrolled in CreditWorks. *Id.* Creason doesn't resist Experian's position that the agreement reaches his claims against Experian Information Solutions.

[2] Creason doesn't dispute that he agreed to the organization's Terms of Use Agreement when he enrolled in CreditWorks. *See* Motion to Compel Arbitration at 3–6; Response at 1–2 (not disputing Experian's factual summary).

[3] The Terms of Use Agreement in effect when Creason created his account on September 11, 2020, also contained an "Amendments" section stating that Creason would be bound by the then-current Terms of Use each time he "order[ed], access[ed], or use[d]" any of the

2

Following his enrollment in CreditWorks, Creason alleges that Experian commingled his credit file with that of another consumer. This "mix," according to Creason, "is so extensive that Experian's credit file has indicated Plaintiff and [another] consumer are the very same person." Complaint (DN 1) ¶ 10. As a result, Creason alleges that other financial institutions denied several of his credit applications. ¶¶ 12–13. Creason further alleges that between 2018 and 2020, Experian impermissibly provided his credit information to third parties when the person with whom Experian confused Creason's account applied for credit. ¶ 16. Each of these errors allegedly caused Creason financial and emotional harm. ¶ 17.

Creason sued Experian in March 2021. Experian answered the complaint in early May, raising 13 affirmative defenses, none of which mentioned arbitration. *See* Answer (DN 7) at 4–8. During 26 months of litigation, stretching across five different scheduling orders, the parties completed fact discovery without Experian ever mentioning arbitration. Experian took the depositions of Creason and his mother, while Creason disclosed two expert reports and scheduled an expert deposition. Response at 1–2.

Not until May 30, 2023, did Experian move to compel arbitration. Creason opposes the motion and seeks additional, limited discovery to show that Experian has waived its right to compel arbitration. *Id.* at 1, 4–5.

## ARBITRABILITY

In enacting the Federal Arbitration Act, Congress established long ago that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act "manifests a liberal federal policy favoring arbitration agreements." *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 748 F.3d 708, 717 (6th Cir. 2014) (internal quotations and citations omitted). And it requires courts to enforce written agreements to arbitrate. *See, e.g.*, *KPMG LLP v. Cocchi*, 565 U.S. 18, 21–22 (2011). Because "arbitration is a matter of contract," however, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (citation omitted).

Creason hasn't disputed that he "agreed … to submit" his claims against Experian to arbitration. *Id.*; *see* nn.1–3 above. So the Court needn't conduct even "a limited review to determine [1] whether the dispute is arbitrable; meaning that a

---

Services or Websites described in the agreement. Williams Decl. at 2 (alterations in original). According to Experian, Creason last logged in to CreditWorks on February 23, 2022. *Id.* at 3. The relevant terms of the Arbitration Agreement did not change in any material way between September 2020 and February 2022. *Compare* Exhibits 2 *and* 4 of the Williams Declaration. Nor does Creason note any relevant changes to the agreement, assuming (as the parties appear to do) that this sort of passive acceptance of unknown future amendments is enforceable as a matter of contract law.

3

valid agreement to arbitrate exists between the parties and [2] that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *AT&T Techs.*, 475 U.S. at 649). Nor do the parties dispute any factual questions relevant to contract formation; Creason's request for supplemental discovery goes only to post-litigation conduct. *See Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("[T]o show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate.") (citing 9 U.S.C. § 4).

This is perhaps unsurprising, as courts in Kentucky and elsewhere recognize the validity of "clickwrap" contracts whereby parties signal their assent to the terms of an agreement by clicking "I agree." *See, e.g.*, *Univ. of Kentucky v. Regard*, 670 S.W.3d 903, 910–11 (Ky. 2023); *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1275 (M.D. Tenn. 2020) (collecting decisions that have "consistently upheld clickwrap agreements"). Further, courts have routinely enforced the same or similar terms of use found in the "clickwrap" agreement hyperlinked on CreditWorks' "Create Your Account" page. *See, e.g.*, *Capps v. JPMorgan Chase Bank, N.A.*, No. 2:22-cv-806, 2023 WL 3030990, at *3–5 (E.D. Cal. Apr. 21, 2023); *Levy v. Credit Plus, Inc.*, No. 21-cv-5541, 2023 WL 2644352, at *7 (S.D.N.Y. Mar. 27, 2023). The "validity of the agreement" between Creason and Experian, in short, is not "in issue." *Great Earth Cos.*, 288 F.3d at 889.[4]

So the question for the Court boils down to pure contract interpretation: who decides whether Experian's litigation conduct effectively waived its right to enforce the arbitration clause? A party may do so if it "knowingly relinquish[es] the right to arbitrate by acting inconsistently with that right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022). This is a threshold question of arbitrability—and such questions are generally for a court to decide. "[T]he court, not the arbitrator, presumptively evaluates whether a defendant should be barred from seeking a referral to arbitration because it has acted inconsistently with reliance on an arbitration agreement." *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008). But this default assignment may be flipped by contract. Parties to an arbitration agreement can, for example, agree to arbitrate "gateway" questions of waiver and enforceability. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519–20 (6th Cir. 2017).

Did the agreement between Creason and Experian delegate "gateway" questions such as waiver to the arbitrator? The terms of the agreement are broad: "All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision[.]" Williams Decl. Exhibit 2 at 16. And that comprehensive delegation, according to the Arbitration Agreement, must be "broadly interpreted …

---

[4] Creason does not contest that Experian, as an affiliate of ECS, may enforce the arbitration agreement. *See Levy*, 2023 WL 2644352, at *7 & n.6; Motion to Compel Arbitration at 10–14 (describing Experian as a third-party beneficiary).

4

to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law." *Id.* Exhibit 2 at 15. So while the "question of arbitrability" is generally an issue for a court, language like this suggesting the parties have "clearly and unmistakably" provided otherwise switches "the presumption [such] that the arbitrator should decide allegations of waiver." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002) (cleaned up). An arbitrator, not this Court, therefore must decide whether this FCRA dispute remains arbitrable notwithstanding two years of federal-court litigation.

This reading is buttressed by the incorporation of the AAA rules into the Arbitration Agreement. *See* Williams Decl. at 3, Exhibit 2 at 16. Creason, as the Reply notes (at 2), "does not dispute that every version of the Terms of Use delegates 'all issues' to an arbitrator, as well as incorporates the AAA rules." As the Sixth Circuit has recognized, the inclusion of these rules weighs heavily in favor of arbitration: "every one of our sister circuits to address the question—eleven out of twelve by our count—has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845–46 (6th Cir. 2020); *see also McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019) (incorporation of the AAA rules in the contract "shows that the parties 'clearly and unmistakably' agreed that the arbitrator would decide questions of arbitrability") (quoting *Howsam*, 537 U.S. at 83).

Under these precedents, the Arbitration Agreement at issue here plainly delegates authority over arbitrability to the arbitrator. The underlying dispute "directly relat[es] to the provision of … Service" by CreditWorks, so the Arbitration Agreement applies. The "scope and enforceability" of the arbitration provision are in question as a result of Creason's waiver argument, so this is among "[a]ll issues" that fall to "the arbitrator to decide." And that agreement incorporated AAA rules that courts have consistently interpreted to delegate arbitrability questions such as this to the arbitrator. Any reasonable interpretation of this language, to say nothing of the broad interpretation called for by the Arbitration Agreement, sends the waiver question to the arbitrator.[5]

Other courts have read similar arbitration agreements to delegate questions of waiver to arbitrators. In *Hilton*, for example, the arbitration provision specified that either party could elect to arbitrate "the validity or enforceability of this arbitration

---

[5] For the same reason, the arbitrator rather than the Court should address Creason's request for additional discovery on the question whether Experian acted inconsistently with its right to arbitrate. Any decisions regarding additional discovery are incidental to the arbitrator's decision regarding arbitrability. So too with Creason's Motion to File a Sur-Reply (DN 61). The underlying brief he seeks to file addresses the waiver question—not who decides that question. Because the sur-reply would therefore be irrelevant to the sole question properly presented in this forum, the Court similarly denies the motion as moot.

clause." *Hilton*, 687 F. App'x at 519 (cleaned up). The Sixth Circuit concluded this entitled the defendant "to elect to arbitrate the waiver issue." *Id.* at 520. Similarly, in *Lyman v. Ford Motor Company*, a district court held that disputes covered by the arbitration clause "include disagreements about the meaning, application or enforceability of this arbitration agreement." No. 21-10024, 2023 WL 2667736 at *5 (E.D. Mich. Mar. 28, 2023). Rejecting the plaintiff's request that the court evaluate the defendant's alleged waiver, the court held that "plaintiffs' waiver argument is a threshold issue" of enforcement that must "be decided by the arbitrator." *Id.*; *cf. Yates v. Royal Consumer Prods., LLC*, No. 3:22-cv-75, 2022 WL 3365075, at *7 (W.D. Ky. Aug. 15, 2022) ("[B]y providing for arbitration in accordance with the AAA Rules, [the plaintiff and defendant] agreed that an arbitrator would determine questions of arbitrability.").[6]

## ORDER

The Court grants the motion to compel arbitration (DN 55), denies as moot Creason's motions for additional discovery (DN 58) and leave to file a sur-reply (DN 61), stays the litigation pending arbitration, and orders the parties to submit a joint status report every 90 days (or fewer) until the arbitration concludes.

Benjamin Beaton, District Judge
United States District Court

March 21, 2024

---

[6] Creason and Experian devote a good deal of space to arguing over which out-of-circuit precedent is more relevant to their dispute: *Coronel v. Bank of America, N.A.*, No. 19-8492, 2022 WL 3443985 (D.N.J. Aug. 17, 2022) or *Coulter v. Experian Information Solutions, Inc.*, No. 20-1814, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021). *Coronel* held that Experian's arbitration agreement was insufficiently clear to delegate a similar waiver question to the arbitrator. Response at 7. *Coulter*, by contrast, read the CreditWorks Terms of Use to delegate the waiver issue to the arbitrator. Reply at 1–2, 6. Because Sixth Circuit precedent is clear and binding, it is not necessary to decide whether Creason or Experian has the better reading of these decisions.